No. 18-CV-0538

# United States District Court
# for the Western District of Wisconsin

_____

In re:

Cranberry Growers Cooperative d/b/a CranGrow,

     Debtor.

Bky No. 17-13318

_____

Maxwell Foods,

     Movant - Appellant,

Case No.: 18-CV-0538

vs.

Cranberry Growers Cooperative d/b/a CranGrow,

     Debtor - Appellee.

_____

### AN APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN
_____

### BRIEF OF APPELLANT MAXWELL FOODS
_____

Thomas J. Lallier (MN #163041)
Cameron A. Lallier (MN #393213)
**FOLEY & MANSFIELD, PLLP**
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
Telephone:  612.338.8690

*Attorneys for Appellant Maxwell Foods.*

747670 v1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES ......................................................... iii

STATEMENT OF APPELLATE JURISDICTION ................................. iv

STATEMENT OF ISSUES ............................................................ 5

    I.    Did the Bankruptcy Court err in granting summary judgment while discovery remained open and prior to the completion of two requested depositions of Appellee's corporate officers which had been stipulated by the parties? ............................................................ 5

    II.    Did the Bankruptcy Court err in holding that Purchase Order 93 was a stand alone contract and did not relate back to the parties' February 24, 2017 agreement and that it was not a single integrated transaction? .................... 5

    III.    Did the parties' February 24, 2017 agreement obligate CranGrow to sell cranberries to Maxwell beyond the initial seven loads? ........................................ 5

    IV.    Did the Bankruptcy Court's holding that the obligations of Purchase Order 93 were incurred post-petition and did not relate back to the parties' February 24, 2017 agreement compel the reopening of the May 29, 2018 "Administrative Expense Claims Bar Date"? ........................................ 5

STATEMENT OF THE CASE............................................................ 6

STATEMENT OF FACTS .............................................................. 8

SUMMARY OF ARGUMENT ........................................................ 10

ARGUMENT ............................................................................ 12

    I.    STANDARD OF REVIEW ........................................................ 12

    II.    DEBTOR'S MOTION FOR SUMMARY JUDGMENT WAS ERRONEOUSLY GRANTED BECAUSE GENUINE DISPUTES REGARDING MATERIAL FACTS EXIST AND DISCOVERY REMAINS ONGOING ...................................... 12

    III.    THE FEBRUARY 24, 2017 AGREEMENT AND PURCHASE ORDER 93 WAS A SINGLE INTEGRATED TRANSACTION, AND MAXWELL FOODS IS ENTITLED TO RECOUPMENT ........................................................ 14

    IV.    UNDER THE FEBRUARY 24, 2017 AGREEMENT, DEBTOR HAD A CONTINUING OBLIGATION BEYOND THE ORIGINAL SEVEN LOADS ................................ 17

    V.    EVEN IF THE BANKRUPTCY COURT WAS NOT ERRONEOUS IN HOLDING THE OBLIGATIONS OF PURCHASE ORDER 93 WAS A POST-PETITION DEBT AND

DID NOT RELATE BACK TO THE FEBRUARY 24, 2017 AGREEMENT, THE
ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHOULD HAVE BEEN
REOPENED AS TO ALLOW APPELLANT AN OPPORTUNITY TO FILE AN
ADMINISTRATIVE EXPENSE CLAIM ....................................................................... 19

CONCLUSION.................................................................................................................... 20

CORPORATE DISCLOSURE STATEMENT ........................................................................ 22

CERTIFICATE OF COMPLIANCE...................................................................................... 22

CERTIFICATE OF SERVICE ............................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ..................................................... 11

Brown v. Gen. Motors Corp., 152 B.R. 935 (W.D. Wis. 1993). ....................................... 13

*Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768 (Bankr. S.D.N.Y. 1988) .... 14

*In re CDM Mgmt. Servs., Inc.*, 226 B.R. 195 (Bankr. S.D. Ind. 1997) ............................ 14

In re Eckerstorfer, 508 B.R. 90 (Bankr. E.D. Wis. 2014). ................................................ 13

*In re Eyke*, 246 B.R. 550 (Bankr. W.D. Mich. 2000) ....................................................... 15

*In re Health Mgmt. Ltd. P'ship*, 336 B.R. 392 (Bankr. C.D. Ill. 2005) ............................ 14

*In re Kelly*, 08-CV-507-BBC, 2008 WL 4889518 (W.D. Wis. Nov. 12, 2008). .............. 11

*In re Reeves*, 265 B.R. 766 (Bankr. N.D. Ohio 2001) ...................................................... 17

*In re Silicon Valley Telecom Exch., LLC*, 284 B.R. 700 (Bankr. N.D. Cal. 2002) .......... 15

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993) ..... 18

*Schultz v. Gen. Elec. Capital Corp.*, 37 F.3d 329 (7th Cir. 1994) .............................. 11, 15

*Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858 (Bankr. S.D. Ohio 2001) .... 15

*Warren Oil v. Conoco*, No. 89-799-A, 1990 U.S. Dist. LEXIS 20017
 (S.D. Iowa June 27, 1990) .............................................................................................. 14

### Statutes

28 U.S.C. § 158(a)(1) ........................................................................................................ iv

### Rules

Fed. R. Bankr. P. 8013 ...................................................................................................... 11

Fed. R. Bankr. P. 9006(b) ...................................................................................... 10, 18, 19

## STATEMENT OF APPELLATE JURISDICTION

Pursuant to 28 U.S.C. § 158(a)(1), the United States District Court for the Western District of Wisconsin has jurisdiction over this appeal from a final order of the United States Bankruptcy Court for the Western District of Wisconsin denying Appellant Maxwell Foods' motion for order authorizing recoupment and granting Appellee Cranberry Growers Cooperative's motion for summary judgment.

## <u>STATEMENT OF ISSUES</u>

I.      Did the Bankruptcy Court err in granting summary judgment while discovery remained open and prior to the completion of two requested depositions of Appellee's corporate officers which had been stipulated by the parties?

II.     Did the Bankruptcy Court err in holding that Purchase Order 93 was a stand alone contract and did not relate back to the parties' February 24, 2017 agreement and that it was not a single integrated transaction?

III.    Did the parties' February 24, 2017 agreement obligate CranGrow to sell cranberries to Maxwell beyond the initial seven loads?

IV.     Did the Bankruptcy Court's holding that the obligations of Purchase Order 93 were incurred post-petition and did not relate back to the parties' February 24, 2017 agreement compel the reopening of the May 29, 2018 "Administrative Expense Claims Bar Date"?

## STATEMENT OF THE CASE

Appellant Maxwell Foods ("Appellant") brought a motion to approve recoupment, or in the alternative motion for relief from stay to exercise right of setoff before the Bankruptcy Court on January 31, 2018. [Docket # 212] Appellant sought to recoup amounts owed to it by the Debtor against pre-petition and post-petition amounts owed by Maxwell Foods to the Debtor. [*Id.* at ¶ 3] Appellee-Debtor Cranberry Growers Cooperative ("Appellee" or "CranGrow") filed its response to Appellant's motion on February 14, 2018. [Docket # 224] CranGrow argued that Maxwell Foods was not entitled to recoupment or offset, disputing that it did not owe any obligation to Appellant. [*Id.* at ¶ 32]

The Bankruptcy Court held a hearing on Appellant's motion on February 20, 2018. The Bankruptcy Court ordered initial disclosures to the other party of persons who may have relevant information on all claims or defenses, and a description of all documents in their possession, custody, or control that may be used to support their claims or defenses. [Docket # 234]

Debtor CranGrow brought a motion for summary judgment on Maxwell Foods' recoupment motion before the Bankruptcy Court on May 15, 2018. [Docket # 301] Appellant filed its opposition response to Debtor's motion on June 1, 2018. [Docket # 322]

The Bankruptcy Court's June 27, 2018 Memorandum Decision granted Debtor's motion for summary judgment on Appellant's assertion of the rights of recoupment or setoff, finding (i) the Agreement did not obligate Debtor to additional sales of

6

cranberries beyond the original seven loads, (ii) the Agreement and Purchase Order 93 did not constitute a single integrated transaction for purposes of recoupment, and setoff is not available in finding (iii) Purchase Order 93 is a stand-alone contract that did not relate back to the Agreement. [Docket # 345]

Appellant timely filed its notice of appeal on July 11, 2018. [Docket # 359] Appellant challenges all of the aforementioned holding of the Bankruptcy Court's Memorandum Decision. Appellant asserts it is entitled to recoupment from the Debtor, or in the alternative, for relief from stay to exercise the right of setoff. In the alternative, Appellant must be allowed to submit a claim for administrative expenses against the Debtor that is deemed timely in light of the May 29, 2018 Administrative Expense Claim Bar Date.

747670 v1

## STATEMENT OF FACTS

Appellant Maxwell Foods is a corporation organized under the laws of Australia. On February 24, 2017, CranGrow and Maxwell Foods entered into an agreement for the sale of sweetened dried cranberries, into the Australian market (the "Agreement"). [Docket # 276 at ¶ 2] Pursuant to the Agreement, Debtor agreed to sell, and Maxwell Foods agreed to purchase seven (7) loads of sweetened dried cranberries at $1.15 per pound with special payment terms. [*id.* at ¶ 3] The parties to the Agreement also agreed that Maxwell would be the sole distributor of Debtor's cranberries in Australia through the end of 2018 if certain conditions were met. [*id.* ¶¶ 3-4] The Agreement further provided that if Maxwell Foods purchased 7 full container loads in 2017 and remained current on payment, the Agreement would continue for 2018. [*id.* ¶ 4]

On February 27, 2017, Maxwell Foods executed a purchase order for the first four loads of cranberries pursuant to the Agreement, and on March 8, 2017, Maxwell Foods executed purchase orders for three additional loads of cranberries. [Docket # 322 at ¶¶ 4-5] Debtor shipped all seven loads of sweetened dried cranberries to Maxwell Foods pursuant to the orders. [*id.* at ¶ 6] Maxwell Foods has not paid the Debtor for the March 8, 2017 Orders ("Loads 5-7"). [Docket # 225 at ¶ 4] However, it is undisputed that as of September 27, 2017, payment was not yet due on any of the orders for Loads 5-7. The parties agree Maxwell Foods owes CranGrow $128,475 for Loads 5-7. [*Id.*; Docket # 322 at ¶ 7]

On September 25, 2017 (the "Petition Date"), the Debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. [Docket # 1]

8

On September 27, 2017, Tim Feit of the Debtor, sent an email to Chris Spratt and Paul Walsh of Maxwell Foods, detailing what cranberries Debtor had available for purchase by lot number and warehouse, and requested that Maxwell Foods "send [Feit] a purchase order as soon as possible. Without a purchase order I can't reserve product." [Docket # 322 at ¶ 12]

Feit also indicated the current price is 1.05 per pound. [*id.*] Paul Walsh then sent an order to Tim Feit offering to purchase an additional 10 loads of cranberries at $1.05 per pound ("Blanket Order 93"). [*id.* at ¶ 10] In the same correspondence, Wash also submitted an order for an additional 6 loads of cranberries with terms and price to be determined ("Blanket Order 94"). [*id.* at ¶ 11] On September 28, 2017, Tom Batey of Maxwell Foods sent a purchase order memorializing Blanket Order 93 to the Debtor ("Purchase Order 93"). [*id.* at ¶ 13] On September 29, 2017, Feit told Maxwell Foods that the Debtor could only offer payment terms of 60 days from BOL with respect to Purchase Order 93. [*id.* at ¶ 15] Maxwell Foods accepted payment terms, and as of October 3, 2017, the parties had an enforceable agreement for Maxwell Foods to purchase and the Debtor to supply 10 loads of sweetened dried cranberries at $1.05 per pound. [*id.* at ¶ 17] The parties' agreement regarding Purchase Order 93 is entirely consistent with the provision of the Agreement which created an exclusive supply arrangement through 2018.

On November 15, 2017, Debtor informed Maxwell Foods that it did not have enough cranberries to meet Purchase Order 93. [Docket # 212 at ¶ 16] Maxwell Foods was left with a gap in their supply chain which threatened their business, forcing it to

9

replace CranGrow cranberries with a new supplier for the promised ten loads. [*id.* at 17]
Maxwell Foods entered into an agreement with Badger State Fruit Processing for ten
orders of dried cranberries at a price of $1.29 per pound for three loads, and $1.34 per
pound for the remaining seven loads. [*id.*] Consequently, Maxwell Foods was forced to
pay $110,100 more than the price agreed to with CranGrow. [*id.* at ¶ 18]

## SUMMARY OF ARGUMENT

The Bankruptcy Court improperly granted Appellee CranGrow's motion for
summary judgment on Appellant Maxwell Foods' motion for order authorizing
recoupment. Summary judgment at this stage is inappropriate because there are genuine
disputes of material facts regarding the February 2017 Agreement and the extent of
CranGrow's obligations under the Agreement. Viewing the record in a light most
favorable to Maxwell Foods, a reasonable fact finder could find the February 2017
Agreement between CranGrow and Maxwell Foods and the Purchase Order 93 was a
single integrated transaction and that CranGrow owed an obligation under the Agreement
for performance of Purchase Order 93.

Additionally, summary judgment is premature since pending requests for
depositions of CranGrow's principals are outstanding for which CranGrow has stipulated
to, and Maxwell Foods has not yet had an opportunity to conduct the depositions of
CranGrow's principals due to scheduling issues on part of CranGrow's counsel.

Finally, in the alternative, if Purchase Order 93 is deemed to be a post-petition
debt, Maxwell Foods should be allowed to file a timely administrative expense claim
under Fed. R. Bankr. P. 9006(b), because the tardiness of the claim is caused by

excusable neglect and Maxwell Foods has acted in good faith with respect to its claim of

$110,100.

## ARGUMENT

### I.   STANDARD OF REVIEW

In a bankruptcy appeal, issues of law are reviewed *de novo*; factual findings may be set aside only if they are clearly erroneous. Fed. R. Bankr. P. 8013. *In re Kelly*, 08-CV-507-BBC, 2008 WL 4889518, at *2 (W.D. Wis. Nov. 12, 2008). A court's grant of a motion for summary judgment is reviewed *de novo* to determine whether the record reveals that there is no genuine issue as to any material fact and movant is entitled to a judgment as a matter of law. *Schultz v. Gen. Elec. Capital Corp.*, 37 F.3d 329, 333 (7th Cir. 1994). In analyzing whether a question of material fact exists, the court must view the record and draw all inferences from it in the light most favorable to the nonmoving party. *Id.* Material facts are facts under the applicable substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### II.   DEBTOR'S MOTION FOR SUMMARY JUDGMENT WAS ERRONEOUSLY GRANTED BECAUSE GENUINE DISPUTES REGARDING MATERIAL FACTS EXIST AND DISCOVERY REMAINS ONGOING

Summary judgment is not appropriate where there is a genuine issue of material fact. *Schultz*, 37 F.3d at 333. Here, the parties dispute their respective liabilities to one another. Debtor asserts as of January 12, 2018, Maxwell Foods owed Debtor $128,475.00 for the March 8, 2017 orders. [Docket # 301 at ¶ 8] Maxwell Foods asserts that it paid $110,100 more under the agreement with Badger State than it would have under Purchase Order 93. Although the parties agree that Maxwell Foods owes CranGrow $128,475 for Loads 5-7, Maxwell Foods asserts that CranGrow owes it $110,100 for breach of Purchase Order 93. Maxwell Foods contends that as of January 12, 2018 it owed

12

CranGrow $18,375.00 after application of Maxwell Foods' right of recoupment and/or offset for the amount of $110,100 Maxwell Foods is owed against the amount of $128,475 that it owes.

At this juncture the Court has competing sworn statements from the parties which analyze the email communications and purchase orders between the parties, reaching opposite conclusions. Neither party has had the opportunity to examine/cross-examine those statements. Affidavit of Christopher Spratt of Maxwell Foods stating that CranGrow had reached out to Maxwell Foods after the filing for bankruptcy, assuring them that they did indeed have the inventory necessary to fulfill the agreement for the ten loads of cranberries. [Docket #276 at ¶ 10] Paul Walsh on behalf of Maxwell Foods subsequently visited CranGrow and inspected the stock, which was determined to be sufficient to satisfy the needs of Maxwell Foods, and thirteen loads were available for purchase. [*Id.* at ¶ 11] Comparatively, the declaration of James Reed of CranGrow stated that Tim Feit of CranGrow began to canvas CranGrow's inventory to ensure that it could fulfill Blanket Order 93 before agreeing to do so. [Docket # 225 at ¶ 15] Moreover, Reed stated that CranGrow never agreed to fulfill Blanket Order 93 or provide the 10 loads of dried cranberries. [*Id.* at ¶ 19]

Maxwell Foods has pending requests outstanding for depositions to which the Debtor has stipulated to. Maxwell Foods should be permitted to avail itself of the depositions of Debtor's principals to which Debtor has agreed to. [Docket # 255 at ¶ 5] Maxwell Foods timely requested taking depositions of both James Reed and Tim Feit pursuant to the parties' stipulation. Due to scheduling issues with Debtor's counsel an

agreeable date and time for those depositions has not been set. Debtor did not request the depositions Maxwell Foods it was entitled to pursuant to the parties' stipulation regarding discovery.

### III. THE FEBRUARY 24, 2017 AGREEMENT AND PURCHASE ORDER 93 WAS A SINGLE INTEGRATED TRANSACTION, AND MAXWELL FOODS IS ENTITLED TO RECOUPMENT

Parties additionally dispute the fact of whether Purchase Order 93 was a single integrated transaction or separate unrelated transactions.

Under Wisconsin law, "Recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction." *Brown v. Gen. Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993). A right of recoupment is exercisable if the obligations at issue are not divisible and are the result of a single transaction. Id at 938. Where it appears that the obligations of the transaction would not have been entered into except upon the clear understanding that the full object of the transaction will be performed, the transaction is not divisible and a party may exercise a right of recoupment arising out to that transaction. Id at 938. Therefore, under Wisconsin law, if the claims at issue have arisen out of the same transaction, as determined by the parties' intent and the object of the transaction, recoupment is available as a defense to the plaintiff's claims.

After examining applicable state law to determine whether such law recognizes the right of recoupment, courts in the Seventh Circuit then have applied bankruptcy law to determine whether a particular creditor is entitled to exercise the right in bankruptcy. *In re Eckerstorfer*, 508 B.R. 90, 96 (Bankr. E.D. Wis. 2014). Courts in the Seventh

14

Circuit have generally applied the "single integrated transaction" test, requiring that the debts involved arise out of a single integrated transaction such that it would be inequitable to allow the debtor to enjoy the benefits of a transaction without also fulfilling its obligations. *In re Health Mgmt. Ltd. P'ship*, 336 B.R. 392, 396 (Bankr. C.D. Ill. 2005); and *see In re CDM Mgmt. Servs., Inc.*, 226 B.R. 195, 197 (Bankr. S.D. Ind. 1997).

There is no established definition of a "single integrated transaction," and determination of whether the test is met is fact specific. Here, the test is met. The purpose of the Agreement between CranGrow and Maxwell Foods was to form a relationship between the parties in the Australian market. At the time an agreement was formed between the parties, both acknowledge the continuing obligations to which they were agreeing, such acknowledgement is evidence of a single continuing transaction. The fact that some of the debts at issue governed by different terms does not bar a finding that the contracts are part of a single integrated transaction. *See Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 783 n.18 (Bankr. S.D.N.Y. 1988) (indicating in dictum that obligations arising under various documents executed appurtenant to a sale transaction may constitute a single integrated transaction). The continuing relationship of the parties is dependent on the Agreement and the transactions would not have continued but for this agreement. Courts in other jurisdictions have found that obligations arising under different contracts can be part of a single integrated transaction where, for example, the purpose of the documents was to facilitate the purpose of the overall transaction. *See Warren Oil v. Conoco*, No. 89-799-A, 1990 U.S. Dist. LEXIS 20017, at *5 (S.D. Iowa June 27, 1990) (finding that the multiple agreements could not be rationally and

15

realistically severed and were thus part of the same transaction); *In re Silicon Valley Telecom Exch., LLC*, 284 B.R. 700, 709 (Bankr. N.D. Cal. 2002) (stating that "the two obligations still might be logically related to each other despite having originated from separate contracts, if, for example, [one agreement] was made for the purpose of permitting Debtor to meet Debtor's obligations under the [other agreement]"); *Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858, 862 (Bankr. S.D. Ohio 2001) (finding that although the obligations at issue arose under two separate documents, the obligations were dependent on each other, and therefore part of a single transaction); *In re Eyke*, 246 B.R. 550, 558 (Bankr. W.D. Mich. 2000) (holding that because the agreements at issue were "necessarily intertwined," they constituted a single integrated transaction for recoupment purposes). The separate contracts involved in *Eyke* were executed in connection with an asset sale transaction, similar to the February 2017 Agreement at issue here. Thus the debts at issue here are a result of a single integrated transaction.

Additionally, since the question of whether Purchase Order 93 and the Agreement is a single integrated transaction is a disputed question of fact, the summary judgment standard must be applied so that all reasonable inferences must be construed in Maxwell Food's favor. *Schultz*, 37 F.3d at 333. A reasonable fact finder could thus conclude that Purchase Order 93 and the Agreement was a single integrated transaction, therefore CranGrow was not entitled to summary judgment on this issue.

## IV.   UNDER THE FEBRUARY 24, 2017 AGREEMENT, DEBTOR HAD A CONTINUING OBLIGATION BEYOND THE ORIGINAL SEVEN LOADS

Demonstrated by parties' competing sworn statements, Maxwell Foods and

CranGrow assert different interpretations of the Agreement and its related

correspondence. Parties dispute the factual question of what additional obligations, if any,

the Agreement placed upon CranGrow to sell additional loads of cranberries to Maxwell

Foods beyond the original seven loads. CranGrow asserts that it had no additional

obligations pursuant to the Agreement, and that all obligations ended after Maxwell

Foods received shipments of the original seven loads of cranberries. [Docket # 301 at

¶¶ 3-6] However, CranGrow's position would first, be at odds with the correspondence

related to Purchase Order 93, and second, create an inequitable result if the Court should

accept CranGrow's interpretation.

Despite Debtor's assertion to the contrary, CranGrow clearly agreed to sell

additional loads of cranberries to Maxwell Foods beyond the original seven loads.

Specifically, on October 3, 2017 Debtor, after negotiating final payment terms with

Maxwell Foods, accepted the 93 Purchase Order. *See*, Docket # 225-5 (Tim Feit email on

October 3, 2017 at 8:08 AM to Paul Walsh, with cc's to Chris Spratt, Tom Batey, Jim

Reed and Mike Stone) ("OK Paul, thanks. I'll be selecting the lot numbers for your 10

load order and will email you the signed PO's with the lot numbers and quantities

listed."). Again on October 19, 2017, Feit confirmed Debtor was working on fulfilling the

93 Purchase Order. *See*, Docket # 225-6 (Tim Feit email to Paul Walsh on October 19,

2017 at 2:18 AM) ("It looks like steps are being taken to ship the last load of your 3 load

17

747670 v1

order (PO5741) using the most recent CranGrow production. We also have two other loads of newer product allocated for your recent order.").

The parties dispute their respective liabilities to one another. Debtor asserts as of January 12, 2018, Maxwell Foods owed the CranGrow's $128,475.00 for the March 8, 2017 Orders. [Docket # 301 at ¶ 8] However, due to CranGrow's failure to deliver dried cranberries to Maxwell Foods, Maxwell Foods was forced to seek a new supplier for cranberries or suffer substantial harm to their business. Maxwell Foods was unable to find a cranberry supplier on short notice which could supply the same quality of cranberries at the same price. Thus due to CranGrow's breach of the Agreement, Maxwell Foods was suffered an economic loss equal to the difference between the price paid for cranberries from CranGrow and the price from the new supplier, Badger State Fruit Processing. Because the obligations at issue arose in such a closely integrated transaction, it would be inequitable to allow CranGrow to enjoy the favorable aspects of the Transaction while avoiding the unfavorable aspects of the same Transaction. *See In re Reeves*, 265 B.R. 766, 772 (Bankr. N.D. Ohio 2001) (stating that the application of the doctrine of recoupment prevents the debtor from assuming the favorable aspects of a transaction while avoiding the unfavorable aspects of the same transaction)

To deny recoupment would allow CranGrow to profit off their breach of the Agreement. Therefore, Maxwell Foods should be allowed to recoup the obligations owed to it by CranGrow under the Agreement. As of January 12, 2018 it owed the CranGrow $18,375.00 after application of Maxwell Foods' rights of recoupment.

18

**V.    EVEN IF THE BANKRUPTCY COURT WAS NOT ERRONEOUS IN HOLDING THE OBLIGATIONS OF PURCHASE ORDER 93 WAS A POST-PETITION DEBT AND DID NOT RELATE BACK TO THE FEBRUARY 24, 2017 AGREEMENT, THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHOULD HAVE BEEN REOPENED AS TO ALLOW APPELLANT AN OPPORTUNITY TO FILE AN ADMINISTRATIVE EXPENSE CLAIM**

In the alternative, even if Purchase Order 93 is deemed not a single integrated transaction with the February 2017 Agreement but is deemed as a post-petition debt incurred by CranGrow, Maxwell Foods is entitled to file an administrative expense claim that is deemed to be timely filed.

Under Rule 9006(b), a bankruptcy court may, in its discretion, grant such relief if the late filing was the result of "excusable neglect." Fed. R. Bankr. P. 9006(b). In determining what sorts of neglect will be considered "excusable," courts make an equitable determination, "taking account of all relevant circumstances surrounding the party's omission. These include . . . [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, although the administrative expense claim bar date was May 29, 2018, Maxwell Foods' administrative expense claim in the amount of $110,100 should be deemed timely as it was the result of excusable neglect. There is minimal danger of prejudice to CranGrow, since CranGrow has been on notice for this amount since at least January 31, 2018, when Maxwell Foods' motion for order authorizing recoupment was

first filed. *See* Docket # 212. Although the length of delay is less than four months late, allowing Maxwell Foods a timely administrative expense claim would not unduly impact judicial proceedings, since the dispute of obligations between CranGrow and Maxwell Foods have been in litigation for the entire length of the delay. Since the reason of the delay was due to pending judicial proceedings, Maxwell Foods acted in good faith and in a timely manner where it was within its reasonable control.

## CONCLUSION

For the reasons stated herein, Appellant Maxwell Foods is entitled to relief from the Bankruptcy Court's grant of CranGrow's motion of summary judgment. There are genuine issues of material facts and competing interpretations by parties in regards to the February 24, 2017 Agreement and the extent of CranGrow's obligations under the Agreement. The Purchase Order 93 was a result of the Agreement between the parties and is a single integrated transaction, such that CranGrow owed an obligation to Maxwell Foods under the Agreement for its fulfillment of Purchase Order 93. CranGrow's failure to perform on Purchase Order 93 caused Maxwell Foods a loss of $110,100 in the difference of purchase price in finding a new vendor for dried cranberries on short notice, and Maxwell Foods is entitled to recoup its loss against its $128,475 debt to CranGrow for previous shipments of cranberries.

Appellant Maxwell Foods requests the Court vacate the Bankruptcy Court's grant of summary judgment in CranGrow's favor.

In the alternative, Appellant requests the Court to allow Appellant to file a timely administrative expense claim under Fed. R. Bankr. P. 9006(b), because the tardiness of

the claim is caused by excusable neglect and Maxwell Foods has acted in good faith with respect to its claim in the amount of $110,100.

**FOLEY & MANSFIELD, PLLP**

Dated: September 17, 2018          By: /s/ Cameron A. Lallier
Thomas J. Lallier (MN #163041)
Cameron A. Lallier (MN #393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
Telephone:   (612) 338-8788
Facsimile:   (612) 338-8690

**ATTORNEYS FOR APPELLANT**

21

## CORPORATE DISCLOSURE STATEMENT

Appellant Maxwell Foods, is an Australian privately held company.  No publicly held corporation owns 10% or more of the stock of Maxwell Foods.

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the limitations prescribed by Federal Rule of Appellate Procedure 29(d). The brief has been prepared in proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 13 point font.  Based upon the word-count function in said software, the brief contains 4,824 words.

## CERTIFICATE OF SERVICE

I, hereby certify that on September 17, 2018, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

**FOLEY & MANSFIELD, PLLP**

Dated: September 17, 2018         By: /s/ Cameron A. Lallier
                                 Thomas J. Lallier (MN #163041)
                                 Cameron A. Lallier (MN #393213)
                                 250 Marquette Avenue, Suite 1200
                                 Minneapolis, MN  55401
                                 Telephone:   (612) 338-8788
                                 Facsimile:   (612) 338-8690

                                 **ATTORNEYS FOR APPELLANT**

747670 v1