# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>**CRANBERRY GROWERS COOPERATIVE,**<br><br>Reorganized Debtor. | Chapter 11<br><br>Bankr. Case No. 17-13318 |
| **MAXWELL FOODS,**<br><br>        Appellant,<br><br>v.<br><br>**CRANBERRY GROWERS COOPERATIVE**,<br><br>        Appellee. | Case No. 18-CV-0538<br><br>The Honorable Barbara B. Crabb<br>United States District Court Judge<br><br>The Honorable Stephen L. Crocker<br>United States Magistrate Judge |

On Appeal from the United States Bankruptcy Court

for the Western District of Wisconsin

## BRIEF OF APPELLEE CRANBERRY GROWERS COOPERATIVE

Peggy Hunt
Dorsey & Whitney LLP
111 South Main Street, 21st Floor
Salt Lake City, UT 84111
Phone (801) 933-7360
Fax (801) 933-7373
hunt.peggy@dorsey.com

*Attorneys for CranGrow*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. Bankr. P. 8012, Appellee Cranberry Growers Cooperative states that it is a privately held cooperative and no publicly held corporation owns 10% or more of its stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................2

TABLE OF CONTENTS....................................................................................3

TABLE OF AUTHORITIES ..............................................................................4

I.   STATEMENT OF ISSUES AND STANDARD OF REVIEW........................6

II.  CONCISE STATEMENT OF CASE ..................................................................9

   A. Relevant Facts........................................................................................10

      1.  The February 2017 Agreement .............................................................10

      2.  Purchase Orders 93 and 94.................................................................11

   B. Relevant Procedural History and Rulings for Review .................................14

      1.  Maxwell's Recoupment Motion.............................................................14

      2.  Discovery.........................................................................................15

      3.  CranGrow's MSJ and the Bankruptcy Court's Memorandum Decision ....17

III.   SUMMARY OF ARGUMENT......................................................................19

IV.    ARGUMENT............................................................................................22

   A. The Bankruptcy Court Properly Found that Maxwell Is Not Entitled to Recoupment. ......................................................................................22

   B. The Bankruptcy Court Properly Found that Setoff Does Not Apply in this Case....................................................................................................28

   C. The Bankruptcy Court Did Not Err in Granting Summary Judgment Prior to the Close of Fact Discovery.................................................................30

   D. The Issue of Whether to Reopen the Administrative Expense Claims Bar Date Is Not Properly Before this Court. .................................................33

V.  CONCLUSION............................................................................................34

CERTIFICATE OF COMPLIANCE....................................................................35

CERTIFICATE OF SERVICE ...........................................................................36

## TABLE OF AUTHORITIES

### Cases

*American Nurses' Ass'n v. Illinois*, 783 F.2d 716 (7th Cir. 1986) .........................32

*Anderson v. Bessemer City*, 470 U.S. 564 (1985).........................................6

*Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*, 879 F.3d 808 (7th Cir. 2018)34

*Brown v. Gen. Motors Corp.*, 152 B.R. 935 (W.D. Wis. 1993) .............................22

*Chambers v. Am. Trans Air*, 17 F.3d 998 (7th Cir. 1994) .......................................33

*Christmas v. Sanders*, 759 F.2d 1284 (7th Cir. 1985) ............................................34

*In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87 (7th Cir. 1986) .................6

*In re Eyke*, 246 B.R. 550 (Bankr. W.D. Mich. 2000) ..............................................27

*In re Health Mgmt. Ltd. P'ship*, 336 B.R. 392 (Bankr. C.D. Ill. 2005)............ 22, 23

*In re Silicon Valley Telecom Exch., LLC,* 284 B.R. 700 (Bankr. N.D. Cal. 2002) .26

*In re Thirtyacre*, 36 F.3d 697 (7th Cir. 1994)...........................................................6

*Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984) .....................................................26

*Miller v. United States*, No. 09-cv-581-bbc, 2010 U.S. Dist. LEXIS 2410, 105
   A.F.T.R.2d (RIA) 557 (W.D. Wis. Jan. 12, 2010) .................................................6

*Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663 (7th Cir.
   2004) .....................................................................................................................7

*Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336 (7th Cir. 1985) .........................31

*Mungo v, Taylor*, 355 F.3d 969 (7th Cir. 2004)........................................................6

*N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93 (2d Cir.
   1997) ...................................................................................................................26

*Sigman v. Aetna Life Ins. Co. (In re Sigman),* 270 B.R. 858 (Bankr. S.D. Ohio
   2001) ...................................................................................................................26

*Stamat v. Neary*, 635 F.3d 974 (7th Cir. 2011).........................................................6

*United States v. Gerth*, 991 F.2d 1428 (8th Cir. 1993)...........................................29

*Warin Oil Co. v. Conoco, Inc.*, 1990 U.S. Dist. LEXIS 20017 (S.D. Iowa June 27,
   1990) ...................................................................................................................26

### Statutes

11 U.S.C. § 553 ........................................................................... 20, 28, 29

**Rules**

Fed. R. Bankr. P. 7056 ........................................................................... 16, 33

Fed. R. Bankr. P. 8012 ................................................................................. 2

Fed. R. Bankr. P. 8015 ............................................................................... 35

Fed. R. Bankr. P. 9014 ..................................................................... 15, 16, 33

Fed. R. Civ. P. 56 ............................................................................. *passim*

4822-3170-4440\10

## I.      STATEMENT OF ISSUES AND STANDARD OF REVIEW

"[A] district court on appeal may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. A bankruptcy court's factual findings are reviewed for clear error; its conclusions of law are reviewed *de novo*."[1]

A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[2]

In cases involving mixed questions of law and fact—where a bankruptcy court's legal conclusions "depend[] on factual determinations made by the bankruptcy court"—the bankruptcy court's factual determinations are subject to the clearly erroneous standard, but "the manner in which these factual conclusions implicate" the bankruptcy court's legal conclusions are reviewed *de novo*.[3]

A bankruptcy court's grant of summary judgment is a conclusion of law that a district court reviews *de novo*, and a "grant of summary judgment will be

---

[1] *Miller v. United States*, No. 09-cv-581-bbc, 2010 U.S. Dist. LEXIS 2410, at *6, 105 A.F.T.R.2d (RIA) 557 (W.D. Wis. Jan. 12, 2010); *Mungo v, Taylor*, 355 F.3d 969, 974 (7th Cir. 2004); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994).

[2] *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994), (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985)).

[3] *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986); *see also Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011).

4822-3170-4440\10

affirmed if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'"[4] Summary judgment may be affirmed on any ground supported by the record, even if it was not relied upon by the court below.[5]

Appellant raises four issues on appeal[6] which are subject to the following standards of review:

1.      Did the Bankruptcy Court err in finding that the February 2017 Agreement did not obligate CranGrow to sell cranberries to Maxwell beyond the initial seven (7) loads? The Bankruptcy Court's factual findings regarding the terms of the February 2017 Agreement are reviewed for clear error.

2.      Did the Bankruptcy Court err in finding that the February 2017 Agreement and Purchase Order 93 were not part of a single integrated transaction? The Bankruptcy Court's legal conclusion that the February 2017 Agreement and Purchase Order 93 did not constitute a single integrated transaction is reviewed *de novo*.

---

[4] *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)).

[5] *Johnson v. Gudmundsson*, 35 F.3d 1104, 1115 (7th Cir. 1994).

[6] Docket No. 3 ("Appellant's Brief"); Bankr. Case. No. 17-13318 No. ("Bankr."). 370.

4822-3170-4440\10

3.      Did the Bankruptcy Court err in granting CranGrow's *Motion for Summary Judgment* when it did, despite the parties' agreement to engage in discovery? The Bankruptcy Court's decision to grant summary judgment is reviewed *de novo*.

4.      Was the Bankruptcy Court required to reopen the "Administrative Expense Claims Bar Date"? This issue is raised by the Appellant for the first time on appeal. Appellant has never asked the Bankruptcy Court for this relief and, as a result, the Bankruptcy Court has never made a ruling on this issue. Accordingly, this is not a proper issue for appeal.

## II.   CONCISE STATEMENT OF CASE

Appellant Maxwell Foods ("Maxwell") and Appellee Cranberry Grower's Cooperative ("CranGrow") entered into an agreement in February 2017 for the sale of seven (7) loads of cranberries. CranGrow delivered these seven (7) loads of cranberries, but Maxwell never paid $128,475 to CranGrow for the last three (3) loads.[7] Shortly after CranGrow declared bankruptcy in the Bankruptcy Court for the Western District of Wisconsin (the "Bankruptcy Court"), Maxwell offered to purchase 10 additional loads of cranberries from CranGrow. The parties differed on the terms of this second offer, and CranGrow never agreed to sell the 10 additional loads of cranberries to Maxwell.

When CranGrow demanded payment for the last three (3) loads of cranberries, Maxwell, rather than paying this debt, filed a *Notice of Hearing and Maxwell Food's Motion for Order Authorizing Recoupment* (the "Recoupment Motion") in the Bankruptcy Court.[8] Maxwell claims that CranGrow breached the supposed post-bankruptcy contract to supply it with 10 additional loads of cranberries valued at $110,000 and, therefore, it should be allowed to recoup or setoff that amount from the $128,475 debt it acknowledges it owes CranGrow

---

[7] Maxwell does not dispute that it owes CranGrow $128,475. Appellant's Brief at 9.

[8] Bankr. 212.

based on the undisputed pre-bankruptcy contract. There is no postpetition contract and, therefore, CranGrow owes no obligations to Maxwell. However, even if CranGrow did owe obligations to Maxwell related to the postpetition 10 load offer, recoupment and setoff still would not apply as a matter of law.[9] The Bankruptcy Court granted summary judgment in favor of CranGrow on these terms. Summary judgment should be affirmed.

**A.    Relevant Facts**

**1.    The February 2017 Agreement**

On February 24, 2017, CranGrow and Maxwell entered into an agreement (the "February 2017 Agreement")[10] under which the parties agreed that (i) CranGrow would sell seven (7) loads of cranberries to Maxwell during 2017 at $1.15/lb with special payment terms, (ii) Maxwell would be the sole distributor of CranGrow's cranberries in Australia through the end of 2017, and (iii) if Maxwell stayed current on all payments for the seven (7) loads, Maxwell would remain the sole distributor of CranGrow's cranberries in Australia through the end of 2018.[11]

---

[9]  Even if recoupment or setoff applied, Maxwell would owe CranGrow at least $18,375.00. Maxwell admits this. Recoupment Motion at 18. Although undisputed, Maxwell has not paid this portion of the debt, despite CranGrow's demand that it do so.

[10] Bankr. 301-1 (Appendix to MSJ ("Appx.")) at 8-9.

[11] *Id.*

The February 2017 Agreement, by its express terms, included no requirement that CranGrow sell additional loads of cranberries to Maxwell beyond the seven (7) loads of cranberries enumerated in the February 2017 Agreement.[12] Maxwell placed purchase orders for these seven (7) loads of cranberries in February and March 2017[13], and it is uncontested that CranGrow shipped and delivered all seven (7) loads of cranberries to Maxwell under the February 2017 Agreement in 2017.[14]

It is also uncontested that Maxwell has not paid CranGrow for the last three (3) loads of cranberries ordered and delivered in 2017 ("Loads 5-7")[15], and as of January 12, 2018, Maxwell owed CranGrow $128,475 for Loads 5-7.[16]

### 2.     Purchase Orders 93 and 94

On September 25, 2017 (the "Petition Date"), CranGrow filed a petition seeking relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.[17] Two days later, on September 27, 2017, Maxwell representative Paul Walsh ("Walsh") sent "Blanket Order 93" to CranGrow representative Tim Feit ("Feit"),

---

[12] *Id.*

[13] *Id.* at 47-53.

[14] Appellant's Brief at 8.

[15] Appx. at 47-53, 4.

[16] Appellant's Brief at 8; Recoupment Motion at ¶ 13.

[17] Bankr. 1.

4822-3170-4440\10

offering to purchase "10 Loads Production April to June 2017" cranberries from CranGrow for $1.05/lb "[s]ubject to sample and specification approval."[18] In the same correspondence, Maxwell made an additional offer to buy six (6) loads of pre-April 1, 2017 cranberries under "Blanket Order 94."[19]

In response, Feit told Walsh on September 27, 2017, that CranGrow needed more information before it could accept Blanket Orders 93 and 94.[20] Feit also told Maxwell representative Chris Spratt ("Spratt") that the parties needed to agree on terms, and Feit needed approval from CranGrow's CEO, Jim Reed ("Reed"), before CranGrow would agree to fulfill Blanket Order 93.[21] On September 28, 2017, Maxwell sent purchase orders memorializing Blanket Order 93 ("Purchase Order 93") and Blanket Order 94 (the "Purchase Order 94") to CranGrow.[22]

Purchase Order 93[23] specifically states the payment terms as "90 days from BOL."[24] On September 29, 2017, Feit told Maxwell that CranGrow could offer payment terms of 60 days from BOL[25], which Maxwell accepted on October 3,

---

[18] Appx. at 27-28.

[19] *Id.* at 27.

[20] *Id.* at 26-27.

[21] *Id.* at 25.

[22] *Id.* at 97, 100-01.

[23] *Id.* at 100.

[24] *Id.*

[25] *Id.* at 31.

2017.[26] However, CranGrow never agreed to sell cranberries to Maxwell pursuant to Purchase Orders 93 or 94.[27]

On October 18, 2017, the parties were still negotiating over terms. Feit told Maxwell's representative, Walsh, that the Debtor had "a little over 4 loads of product made after 4/1/17"—suitable for Purchase Order 93—"and around 11 loads of product made prior to 4/1/17"—suitable for Purchase Order 94. In response, Walsh said,

> From what we can see these loads *all* need to be reworked. . . . The cost is 35 cents a pound if I don't look too hard. Accordingly we can only offer 70 cents per lb for this material. . . . We can take ten loads at that price if there is any interest on your side. Please advise by prompt reply.[28]

In other words, Walsh abandoned Purchase Orders 93 and 94 altogether, and offered to buy 10 loads of cranberries produced in 2017, regardless of the month, for $0.70/lb. CranGrow did not accept Maxwell's offer to purchase 10 loads of product at $0.70/lb.[29]

On November 14, 2017, Maxwell send an email to Feit requesting cranberries from July 2017.[30] In response, Feit told Maxwell that CranGrow was

---

[26] *Id.* at 30-31.

[27] *Id.* at 4.

[28] *Id.* at 36-37 (emphasis added).

[29] *Id.* at 5.

[30] *Id.* at 95-96.

sold out of cranberries.[31] According to Maxwell, because it was unable to purchase cranberries from CranGrow under Purchase Order 93, Maxwell was forced to purchase cranberries at a higher price from other suppliers. CranGrow denies that Purchase Order 93 constituted a valid contract between the parties. Maxwell did not brings any claims under Purchase Order 94, and as such Purchase Order 93 is the only contract at issue.

### B.   Relevant Procedural History and Rulings for Review

#### 1.   Maxwell's Recoupment Motion

On January 31, 2018, instead of paying CranGrow the $128,475 owed under the February 2017 Agreement, Maxwell filed the Recoupment Motion. In the Recoupment Motion, Maxwell attempted to reduce its $128,475 liability to CranGrow for Loads 5-7 by arguing that (i) Purchase Order 93 was a valid contract which obligated CranGrow to sell 10 additional loads of cranberries to Maxwell, (ii) CranGrow's failure to do so forced Maxwell to purchase cranberries from other suppliers for an additional $110,000, and (iii) that Maxwell could offset its liability to CranGrow through the doctrines of recoupment or setoff. Maxwell provided no evidence in support of the Recoupment Motion. On February 14, 2018, CranGrow

---

[31] *Id.* at 95.

4822-3170-4440\10

filed an *Objection*[32] to the Motion, supported by a *Declaration* from Reed (the "Reed Declaration").[33]

At a hearing on the Recoupment Motion on February 20, 2018, the Bankruptcy Court certified the dispute between the parties as a "contested matter" under Fed. R. Bankr. P. 9014, allowing the parties to engage in discovery and making several of the Federal Rules of Civil Procedure, including Rule 56, applicable to the dispute.[34] The Bankruptcy Court ordered the parties to provide initial disclosures to each other and confer within 30 days "with regard to timing for discovery."[35]

### 2. Discovery

After conferring, the parties filed a *Joint Report of Discovery Conference* describing their agreed discovery plan and timeline.[36] Among other items, and as relevant to this appeal, the parties agreed that: (i) Maxwell would file a sworn statement and evidence in support of the Recoupment Motion by April 25, 2018; (ii) the parties would exchange all documents relevant to the dispute; and (iii)

---

[32] Bankr. 224.

[33] Bankr. 225.

[34] *See* Fed. R. Bankr. P. 9014(c).

[35] Bankr. 234.

[36] Bankr. 255.

4822-3170-4440\10

Maxwell could take the depositions of Reed and Feit prior to May 25, 2018.[37] The parties subsequently exchanged documents and Maxwell filed an *Affidavit* from Spratt in support of the Recoupment Motion on April 25, 2018 (the "Spratt Affidavit").[38]

Upon review of the evidence produced during discovery, CranGrow decided it did not need to conduct depositions to prevail in the contested matter. Accordingly, on May 15, 2018, CranGrow filed a *Motion for Summary Judgment* (the "MSJ") asking the Bankruptcy Court to deny Maxwell's Recoupment Motion.[39] On Tuesday, May 22, 2018, Maxwell suddenly asked to depose Reed and Feit—this request came just three days before the deadline for Maxwell to *complete* depositions. Prior to this request, Maxwell had made no indication that it intended to conduct depositions. With the MSJ pending, CranGrow declined to participate in such hurried depositions, and counsel for CranGrow assured counsel for Maxwell that if the Bankruptcy Court denied the MSJ, CranGrow would agree to conduct depositions at that point.[40]

---

[37] *Id.*

[38] Bankr. 276.

[39] Bankr. 301. CranGrow filed the MSJ pursuant to Fed. R. Civ. P. 56, made applicable in the contested matter under Fed. R. Bankr. P. 9014 and 7056.

[40] Despite the fact that there is no evidence in the record regarding attempts to schedule depositions, Maxwell has raised this as an issue, and CranGrow responds here to answer Maxwell's statements.

### 3.   CranGrow's MSJ and the Bankruptcy Court's Memorandum Decision

In the MSJ, CranGrow assumed for the sake of argument and for purposes of that motion only that Purchase Order 93 constituted a binding contract between the parties, and that Maxwell had a valid claim against CranGrow for $110,000. Even given that assumption, however, CranGrow showed on the undisputed facts that Maxwell was not entitled to recoupment or setoff as a matter of law. Maxwell filed an *Opposition*[41] to the MSJ on June 1, 2018, and CranGrow filed a *Reply*[42] on June 19, 2018.

On June 27, 2018, the Bankruptcy Court issued its *Memorandum Decision*[43] (the "Memorandum Decision") and *Order*[44] (the "Order") granting CranGrow's MSJ and denying Maxwell's Recoupment Motion. In the Memorandum Decision, the Bankruptcy Court found as a factual matter that: (i) the February 2017 Agreement was a binding contract under which CranGrow agreed to sell and Maxwell agreed to buy seven (7) loads of cranberries in 2017 according to stated terms, and CranGrow agreed to sell cranberries in Australia exclusively to Maxwell through 2017, with the possibility of extending that exclusivity through

---

[41] Bankr. 322.

[42] Bankr. 338.

[43] Bankr. 345.

[44] Bankr. 346.

2018; and (ii) the February 2017 Agreement did not obligate CranGrow to sell or Maxwell to buy any additional cranberries beyond the seven (7) loads specified in the February 2017 Agreement. Based on these factual findings, the Bankruptcy Court held that: assuming without deciding that Purchase Order 93 was a valid contract, (a) the common law doctrine of recoupment did not apply as a matter of law because the February 2017 Agreement and Purchase Order 93 were not part of a "single integrated transaction"; and (b) Maxwell was not entitled to setoff under 11 U.S.C. § 553 as a matter of law because the February 2017 Agreement and Purchase Order 93 did not both arise prepetition and therefore, were not "mutual" obligations are expressly required under that section.

Maxwell filed its *Notice of Appeal*[45] on July 11, 2018, appealing the Bankruptcy Court's Order to this Court.

---

[45] Bankr. 359.

## III.   SUMMARY OF ARGUMENT

Appellant Maxwell raises four issues on appeal[46]:

1.      Did the Bankruptcy Court err in finding that the February 2017 Agreement did not obligate CranGrow to sell cranberries to Maxwell beyond the initial seven (7) loads?

2.      Did the Bankruptcy Court err in finding that the February 2017 Agreement and Purchase Order 93 were not part of a single integrated transaction?

3.      Did the Bankruptcy Court err in granting CranGrow's MSJ when it did, despite the parties' agreement to engage in discovery?

4.      Was the Bankruptcy Court required to reopen the Administrative Expense Claims Bar Date?

These issues may be distilled into two questions: did the Bankruptcy Court properly resolve Maxwell's claim for recoupment, and did the Bankruptcy Court follow correct procedure in granting summary judgment? Upon review of the record in this case, this Court will find the answer to both of these questions is "yes."

Although Maxwell admits that it owes $128,475 to CranGrow for Loads 5-7 under the February 2017 Agreement, it argues that CranGrow also owes money to Maxwell for failing to fill Purchase Order 93, and that Maxwell should be able to

---

[46] Appellant's Brief; Bankr. 370.

recoup or setoff these mutual claims. While CranGrow disputes that it owes any obligation to Maxwell related to Purchase Order 93, for the sake of argument and for purposes of the MSJ, CranGrow assumed that Purchase Order 93 constituted a valid contract obligating CranGrow to sell 10 loads of cranberries to Maxwell, and that CranGrow's failure to do so gave Maxwell a valid claim against CranGrow for $110,000. The Bankruptcy Court made the same assumption as to Purchase Order 93 in the Memorandum Decision. Relying on this assumption, the Bankruptcy Court properly found that, as a matter of law, Maxwell could not reduce its liability to CranGrow through recoupment or setoff.

The equitable doctrine of recoupment only applies to obligations that arise out of the same transaction. Because it cannot be disputed that the February 2017 Agreement and Purchase Order 93 were separate agreements that did not arise out of the same transaction, recoupment does not apply. Further, setoff under Section 553 of the Bankruptcy Code only applies to "mutual" obligations that arise on the same side of a debtor's bankruptcy petition date.[47] Under the express terms of Section 553, Maxwell is not entitled to setoff as a matter of law because the February 2017 Agreement arose prepetition and Purchase Order 93 arose postpetition and, therefore, there are no "mutual" debts.

---

[47] 11 U.S.C. § 553.

4822-3170-4440\10

Additionally, the Bankruptcy Court properly granted summary judgment to CranGrow before the parties conducted depositions. Fed. R. Civ. P. 56 and binding case law make it clear that, in the absence of genuine issues of material fact, a court *shall* grant summary judgment to a party that is entitled to judgment as a matter of law, regardless of whether discovery remains ongoing. CranGrow met the standard for summary judgment, and the Bankruptcy Court properly granted summary judgment under Fed. R. Civ. P. 56.

Finally, the question of whether the Bankruptcy Court's Order compelled the reopening of the "Administrative Expense Claims Bar Date" in CranGrow's bankruptcy case is not properly before this Court on appeal. Maxwell never requested this relief, there has been no ruling on this question below, and Maxwell may not raise this issue for the first time on appeal. Accordingly, it is respectfully submitted that this Court should decline to decide this issue as part of this appeal.

## IV.   ARGUMENT

### A.   The Bankruptcy Court Properly Found that Maxwell Is Not Entitled to Recoupment.

In order for Maxwell to reduce CranGrow's claim against it through the equitable doctrine of recoupment, it must show that the parties' obligations arose out of the same transaction. However, the undisputed facts show that Maxwell's obligation to CranGrow arose from the February 2017 Agreement, but that CranGrow's alleged obligation to Maxwell arose from an entirely separate transaction, Purchase Order 93. Because the obligations do not arise from the same transaction, recoupment does not apply as a matter of law.

"Recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction."[48] To determine whether mutual debts arise out of the same transaction sufficient for recoupment to apply, courts in the Seventh Circuit use the "single integrated transaction test," under which they look at the "logical relationship" between the debts, focusing on "the agreement between the parties."[49] For example, in *In re Health Management*, insurer Blue Cross and healthcare provider Health Management had an agreement under which Blue Cross regularly made payments to Health Management for services at full cost, and two

---

[48] *Brown v. Gen. Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993).

[49] *In re Health Mgmt. Ltd. P'ship*, 336 B.R. 392, 396 (Bankr. C.D. Ill. 2005).

months later the costs would be recalculated and Blue Cross would recover the amount it had overpaid.[50] The court found that recoupment was permissible because these ongoing charges and payments were all part of "one ongoing, integrated transaction."[51]

The Bankruptcy Court properly found that, unlike the agreement at issue in *In re Health Management*, the February 2017 Agreement and Purchase Order 93 are not part of a single integrated transaction. This legal conclusion is based on the Bankruptcy Court's specific factual findings, amply supported by the record, as to the separate and distinct terms and negotiations of the two agreements.[52] The parties negotiated and agreed on the February 2017 Agreement in February 2017, and specified the dates, payments terms, and shipping details of the seven (7) loads of cranberries CranGrow would sell and deliver to Maxwell during 2017.[53] The seven (7) loads of cranberries were then shipped and sold throughout 2017 without further negotiation between the parties. In contrast, the parties negotiated and entered into Purchase Order 93 more than seven months after the February 2017 Agreement, and negotiated anew the dates, price, and payment terms for Purchase

---

[50] *Id.* at 396-397.

[51] *Id.* at 397.

[52] *See* Memorandum Decision at 2, 6-7, 11-12.

[53] MSJ at Statement of Undisputed Facts ("Facts") ¶¶ 1-3.

Order 93: CranGrow hesitated to agree to Purchase Order 93[54]; Maxwell tried to

obtain 90 days BOL terms rather than the 60 days BOL terms from the February

2017 Agreement[55]; and then Maxwell tried to renegotiate the price for ten (10)

loads of cranberries on October 18, 2018.[56] These disputes indicate that Purchase

Order 93 was not a seamless continuance of the February 2017 Agreement.

Maxwell incorrectly claims that the obligations created between the parties

under the February 2017 Agreement somehow carry over to Purchase Order 93.

However, the Bankruptcy Court properly found that, under the express terms of the

February 2017 Agreement, the parties agreed that (i) CranGrow would sell seven

(7) loads of sweetened dried cranberries to Maxwell during 2017 at $1.15/lb with

special payment terms, (ii) Maxwell would be the sole distributor of CranGrow's

cranberries in Australia through the end of 2017, and (iii) if Maxwell stayed

current on all payments for the seven (7) loads, Maxwell would remain the sole

distributor of CranGrow's cranberries in Australia through the end of 2018.[57]

Maxwell admits that CranGrow did sell the stated seven (7) loads of cranberries to

Maxwell during 2017.[58] Because the February 2017 Agreement does not require

---

[54] *Id.* at ¶¶ 11-12.

[55] *Id.* at ¶ 14.

[56] *Id.* at ¶ 17.

[57] Appx. at 8-9; Memorandum Decision at 7.

[58] Appellant's Brief at 9.

CranGrow to sell cranberries to Maxwell beyond those seven (7) loads, upon completion of the sale of the seven (7) loads of cranberries, CranGrow had _no further positive obligations_ under the February 2017 Agreement.[59] Any positive obligations CranGrow undertook pursuant to Purchase Order 93 were in addition to, and not a part or extension of, the February 2017 Agreement. Accordingly, the Bankruptcy Court's factual conclusion that the February 2017 Agreement and Purchase Order 93 are separate, distinct transactions is not clearly erroneous.[60]

Based on its correct finding that the February 2017 Agreement and Purchase Order 93 are separate transactions, the Bankruptcy Court also properly concluded that the agreements, assumed for purposes of these proceedings to exist, were not part of a "single integrated transaction" as required by the doctrine of recoupment, and thus recoupment does not apply as a matter of law.

Maxwell's appeal to case law does not help its argument in support of reversal. Maxwell cites several nonbinding cases in support of its position that obligations arising under different contracts can be part of a single integrated

---

[59] Memorandum Decision at 10.

[60] _See id._ at 11-12:

> There is nothing in the [February 2017] Agreement that directly bears on Purchase Order 93: it did not establish price or payment terms, and it did not require Maxwell to buy any determined number of loads past the seven (7) uncontested loads. . . . Purchase Order 93 was simply a later order for the purchase of cranberries that the parties negotiated anew, separate and unbound by the terms of the [February 2017] Agreement."

25

transaction[61] but fails to acknowledge that still other jurisdictions, including those in the Seventh Circuit discussed above, have found the opposite—that recoupment only applies when claims "arise out of the same contract."[62] Regardless, Maxwell's cited cases do not help its argument.

In *Warin Oil Co. v. Conoco, Inc.*, the parties had ongoing marketing and retail credit card agreements between them that the court found constituted a "single overall relationship, sufficiently interconnected to be part of a single transactional whole."[63] In contrast, in the present case CranGrow and Maxwell had entered into one agreement for the sale of seven (7) loads of cranberries in 2017 and then, seven months later, allegedly negotiated a second agreement with disputed terms for the sale of 10 loads of cranberries—hardly a synchronized "single transactional whole."

Additionally, the statements Maxwell cites from *In re Silicon Valley Telecom Exch., LLC*[64] and *Sigman v. Aetna Life Ins. Co. (In re Sigman)*[65] indicate

---

[61] Appellant's Brief at 15-16.

[62] *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984); *see also N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 96 (2d Cir. 1997) ("Recoupment in bankruptcy may occur only within a single contract or transaction or a single set of transactions.").

[63] No. 89-799-A 1990, U.S. Dist. LEXIS 20017, at *3 (S.D. Iowa June 27, 1990), *cited in* Appellant's Brief at 15-16.

[64] 284 B.R. 700 (Bankr. N.D. Cal. 2002), *cited in* Appellant's Brief at 16.

[65] 270 B.R. 858, 862 (Bankr. S.D. Ohio 2001), *cited in* Appellant's Brief at 16.

that obligations arising under separate contracts may constitute a single integrated transaction if the second agreement was entered into to enable the fulfillment of the first, or the two obligations depend on each other for their fulfillment. Such is not the case here, where it is undisputed that CranGrow fully performed its obligations under the February 2017 Agreement to provide seven (7) loads of cranberries to Maxwell in 2017, and was in no way obligated to sell any more cranberries to Maxwell.[66] The parties did not agree on Purchase Order 93 to enable the parties to meet the demands of the February 2017 Agreement, nor were the two contracts dependent on one another for their mutual fulfillment.

And finally, contrary to Maxwell's claim, the facts of *In re Eyke*[67] are not similar to those of the instant case. The parties in *In re Eyke* entered into the two agreements at issue on the same day, both agreements related to the same asset sale transaction, and both agreements referenced and depended on each other for their mutual fulfillment.[68] As explained above and found by the Bankruptcy Court, the February 2017 Agreement and Purchase Order 93 were temporally separated by 7 months, and were independent of one another for their fulfillment. Accordingly,

---

[66] MSJ at Facts ¶¶ 4, 6; Memorandum Decision at 10.

[67] 246 B.R. 550, 558 (Bankr. W.D. Mich. 2000), *cited in* Appellant's Brief at 16.

[68] *Id.*

none of Maxwell's cited cases supports its argument that the two agreements at issue in this case were part of a single integrated agreement.

Based on the undisputed evidence, the Bankruptcy Court properly found that, even assuming Purchase Order 93 created a valid contract between the parties, the February 2017 Agreement and Purchase Order 93 were separate contracts. Because they are distinct contracts temporally separated by several months and independent of one another for their respective fulfillment, the Bankruptcy Court properly concluded that the February 2017 Agreement and Purchase Order 93 were not part of a single integrated agreement, that recoupment does not apply to this case, and that Maxwell may not reduce its liability to CranGrow by claiming the right of recoupment.

### B.     The Bankruptcy Court Properly Found that Setoff Does Not Apply in this Case.[69]

To establish its right to offset the mutual obligations between the parties under Wisconsin law and 11 U.S.C. § 553, Maxwell must show that the mutual obligations both arose before CranGrow's Petition Date. However, the undisputed

---

[69] Maxwell has not properly raised the issue of setoff in its statement of issues on appeal and makes no any argument related to setoff in the body of its brief. *See* Appellant's Brief. However, in its "Statement of the Case" Maxwell requests alternative "relief from stay to exercise the right of setoff." *Id.* at 7. Although it does not believe the issue of setoff is properly before this Court on appeal, out of an abundance of caution, CranGrow includes its argument here as to why Maxwell is not entitled to setoff.

facts show that Maxwell's obligation to CranGrow arose under the prepetition February 2017 Agreement, but that CranGrow's obligation to Maxwell arose under the postpetition 93 Purchase Order. Because the mutual obligations between the parties did not arise on the same side of the Petition Date, the Bankruptcy Court properly found that setoff does not apply.

In bankruptcy, the right of setoff allows "a creditor to offset a mutual [prepetition] debt owing by such creditor to the debtor . . . against a [prepetition] claim of such creditor against the debtor."[70] In order for a creditor to "establish its right of setoff, it must demonstrate: 1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case. 2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case. 3. The debt and the claim are mutual obligations."[71] "In other words, it is necessary only that the debt and the claim *both arose prepetition* and are mutual."[72]

Maxwell cannot meet this standard because the obligations between the parties arose on different sides of CranGrow's Petition Date. As the undisputed facts show, the parties entered into the February 2017 Agreement on February 24,

---

[70] 11 U.S.C. § 553.

[71] *United States v. Gerth*, 991 F.2d 1428, 1431 (8th Cir. 1993).

[72] *Id.* (emphasis added).

2017.[73] CranGrow declared bankruptcy on September 25, 2017.[74] Maxwell first submitted Blanket Order 93 on September 27, 2017, and actually sent Purchase Order 93 on September 28, 2017.[75] Thus, the very earliest CranGrow could have become obligated on Purchase Order 93 was September 27, 2017, *two days after the Petition Date*.

Because the obligations between the parties under the February 2017 Agreement and Purchase Order 93 did not both arise before the Petition Date, the Bankruptcy Court properly found that Maxwell may not claim the right of setoff.

### C.   <u>The Bankruptcy Court Did Not Err in Granting Summary Judgment Prior to the Close of Fact Discovery</u>

Maxwell argues that the Bankruptcy Court should not have granted the MSJ because there are genuine issues of material fact and because CranGrow filed the Motion prior to the close of discovery. However, Maxwell does not point to any questions of material fact that should have precluded summary judgment, nor does it even make any argument as to why uncompleted discovery should have prevented the Bankruptcy Court from granting summary judgment.

In support of its claim that "genuine disputes regarding material facts exist," Maxwell first states that "the parties dispute their respective liabilities to one

---

[73] MSJ at Facts ¶ 1.

[74] *Id.* at Facts ¶ 9; Bankr. 1.

[75] MSJ at Facts ¶¶ 10-13.

another," but does not explain why this precludes summary judgment. The parties'
disagreement about the amounts owed under the February 2017 Agreement and
Purchase Order 93 is not material to whether those two agreements are part of a
single integrated transaction for purposes of recoupment or whether they arose on
the same side of the Petition Date for purposes of setoff. Indeed, as a practical
matter, if disagreement between parties about their respective liabilities were
sufficient to preclude summary judgment, no case would ever be decided on
summary judgment—the parties would either agree on who owed what to whom
and settle, or they would persist in their disagreement and, absent summary
judgment, the dispute would be decided at trial by a finder of fact. Such a scheme
would render Fed. R. Civ. P. 56 a nullity and frustrate the purpose of summary
judgment to "prevent an unnecessary trial where, on the basis of the pleadings and
supporting documents, there remains no material issue of fact to be tried."[76] In any
event, the parties' dispute over their relative liabilities is not a material issue of fact
precluding summary judgment.

Second, Maxwell also claims that the "competing sworn statements" from
the parties—the Reed Declaration and the Spratt Affidavit—present genuine issues
of material fact. The only material fact those statements contest is whether

---

[76] *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1339 (7th Cir. 1985).

4822-3170-4440\10

Purchase Order 93 was a valid contract or not.[77] However, as stated above, CranGrow already assumed for the sake of argument in the MSJ that Purchase Order 93 was valid, and in the Memorandum Decision, the Bankruptcy Court also assumed without deciding that Purchase Order 93 was valid.[78] Accordingly, there was no dispute about the validity of Purchase Order 93 for purposes of these proceedings, and the Reed Declaration and Spratt Affidavit do not preclude summary judgment.

Maxwell complains that it was inappropriate for the Bankruptcy Court to grant summary judgment before Maxwell completed its discovery. This argument fails for at least two reasons. First, there is nothing improper about a party moving for or a court granting summary judgment during discovery. According to the Seventh Circuit, a party "may move for summary judgment at any time," and the "fact that discovery is not complete—indeed, has not begun—need not defeat the motion."[79] In this case, the Bankruptcy Court found, on the undisputed material facts, that Maxwell was not entitled to recoupment or setoff. Additional immaterial facts would not have led to a different outcome for Maxwell.

---

[77] Bankr. Docket Nos. 225, 276.

[78] MSJ at 5; Memorandum Decision at 9.

[79] *American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 729 (7th Cir. 1986).

4822-3170-4440\10

Second, Fed. R. Civ. P. 56(d), made applicable in this case under Fed. R. Bankr. P. 7056 and 9014, provides a procedure under which a nonmovant such as Maxwell may ask that consideration of a motion for summary judgment be paused while the nonmovant conducts discovery—the nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Maxwell did not do this. While Maxwell did argue in its *Opposition* to the MSJ that the Bankruptcy Court should not grant summary judgment before Maxwell completed discovery[80], it did not state, let alone swear by affidavit, that it could not present facts necessary to oppose the MSJ without further discovery. When a party fails a file an affidavit under Rule 56(d), the trial court has discretion to deny a later request for further discovery.[81] Absent a Rule 56(d) affidavit from Maxwell, the Bankruptcy Court could properly decide the MSJ before the close of fact discovery.

### D.   The Issue of Whether to Reopen the Administrative Expense Claims Bar Date Is Not Properly Before this Court.

Maxwell has improperly asked this Court to decide, for the first time in this case, on appeal, whether the Maxwell should be allowed to file an administrative expense claim in CranGrow's bankruptcy case despite the fact that the deadline to

---

[80] *See* Bankr. 322 at 9.

[81] *Chambers v. Am. Trans Air*, 17 F.3d 998, 1002 (7th Cir. 1994).

file such claims pursuant to the "Administrative Expense Claims Bar Date" passed on May 29, 2018.[82] Maxwell has never requested this relief from the Bankruptcy Court, and consequently the Bankruptcy Court has never ruled on this issue. "It is well established that a party waives the right to argue an issue on appeal if he failed to raise that issue before the lower court."[83] Accordingly, Maxwell may not raise this issue for the first time on appeal.

## V.    CONCLUSION

For the foregoing reasons, CranGrow respectfully requests that the Court affirm the decision of the Bankruptcy Court granting summary judgment in favor of CranGrow.

Dated:  October 22, 2018.        By:    */s/ Peggy Hunt*
                                        Peggy Hunt
                                        Dorsey & Whitney LLP
                                        111 South Main Street, 21st Floor
                                        Salt Lake City, UT 84111
                                        Phone (801) 933-7360
                                        Fax (801) 933-7373
                                        hunt.peggy@dorsey.com

                                        *Attorneys for CranGrow*

---

[82] Bankr. 284.

[83] *Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*, 879 F.3d 808, 821 (7th Cir. 2018); *see also Christmas v. Sanders*, 759 F.2d 1284, 1291 (7th Cir. 1985) ("It is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal.").

34

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the typeface requirements of

Fed. R. Bankr. P. 8015(5)(A) and the type style requirements of Fed. R. Bankr. P.

8015(6) because this document has been prepared in a proportionally spaced

typeface using Microsoft Word 2016 in Times New Roman 14 point font.

I hereby that this brief complies with the type-volume limitation of Fed. R.

Bankr. P. 8015(7)(B)(ii) because, excluding the parts of the document exempted by

Fed. R. Bankr. P. 8015(7)(B)(iii), this brief contains 6,905 words.


Dated:  October 22, 2018.         By:    */s/ Peggy Hunt*
                                         Peggy Hunt
                                         Dorsey & Whitney LLP
                                         111 South Main Street, 21st Floor
                                         Salt Lake City, UT 84111
                                         Phone (801) 933-7360
                                         Fax (801) 933-7373
                                         hunt.peggy@dorsey.com

                                         *Attorneys for CranGrow*

4822-3170-4440\10

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 22, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                         */s/ John J. Wiest*