No. 18-CV-0538

# United States District Court
# for the Western District of Wisconsin

_____

In re:

Cranberry Growers Cooperative d/b/a CranGrow,

    Debtor.

Bky No. 17-13318

---

Maxwell Foods,

    Movant - Appellant,

Case No.: 18-CV-0538

vs.

Cranberry Growers Cooperative d/b/a CranGrow,

    Debtor - Appellee.

---

AN APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

**APPELLANT'S REPLY BRIEF**
_____

Thomas J. Lallier (MN #163041)
Cameron A. Lallier (MN #393213)
**FOLEY & MANSFIELD, PLLP**
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
Telephone:  612.338.8690

*Attorneys for Appellant Maxwell Foods.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................2

ARGUMENT ....................................................................................................3
    I.    PURCHASE ORDER 93 WAS A VALID AND ENFORCEABLE CONTRACT
    II.    PURCHASE ORDER 93 RELATES BACK TO OTHER ORDERS MADE PURSUANT TO THE FEBRUARY 2017 AGREEMENT, AND ALL ORDERS TOGETHER IS A SINGLE INTEGRATED TRANSACTION
    III.    THE COURT SHOULD REMAND THE ISSUE OF ADMINISTRATIVE EXPENSE FOR THE BANKRUPTCY COURT TO DECIDE

CONCLUSION .................................................................................................9

CERTIFICATE OF COMPLIANCE..............................................................11

CERTIFICATE OF SERVICE .......................................................................12

# ARGUMENT

## I.  PURCHASE ORDER 93 WAS A VALID AND ENFORCEABLE CONTRACT

On September 27, 2017, Maxwell Foods sent Debtor CranGrow a purchase order ("Purchase Order 93") pursuant to their February 2017 master agreement ("February 2017 Agreement"). Special instructions in the purchase order stated payment terms is 90 days from BOL. [Docket # 276-C] Tim Feit of CranGrow, in an email correspondence on September 28, 2017 countered that "[t]he last purchase orders . . . we received from Maxwell Foods in August 2017, listed payment terms as 60 days from BOL. Those are by far the best terms we've ever given any of our customers. Let's keep the terms the same as your last order." [Docket # 225-5] Maxwell Foods accepted the changed terms. [*Id.* (Paul Walsh email on October 3, 2017 at 5:41 AM) ("Tim 60 days is fine.")]. Debtor argues that the change of the payment terms prevented the formation of a valid contract.

Under the Uniform Commercial Code § 2-207, as set forth in Wisconsin Statute Section 402.207, terms that are different or additional to the contract between merchants are construed to be proposals for the addition to the contract. A written confirmation from the seller operates as an acceptance even though it contains terms not found in the buyer's offer. Where both parties are merchants, as both parties are, the new terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or

3

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received. Wis. Stat. § 402.207; *Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 66 (7th Cir. 1995).

Despite Debtor's arguments to the contrary, Debtor accepted Purchase Order 93. *See* Docket # 225-5 (Tim Feit email on October 3, 2017 at 8:08 AM) ("Ok Paul, thanks. I'll be selecting the lot numbers for your 10 load order and will email you the signed PO's with the lot numbers and quantities listed.").

Maxwell Foods did not make the payment terms in Purchase Order 93 a condition for acceptance. With the February 2017 Agreement, the parties had intended from the outset to have a single master agreement with multiple and differing purchase orders to be submitted throughout the year of 2017. [Docket # 276-A] The Agreement allows parties the flexibility to adjust for changing market factors (such as price and payment terms) over the course of an agreement that spans a period of time. In negotiating the February 2017 Agreement, the parties agreed to allow for progressively better payment terms for Maxwell Foods with each purchase order, as Maxwell Foods remained current on payments and the parties developed a "spirit of a partnership." [*Id.*] Since the parties intended for differing and negotiable payment terms, the change in payment terms from Maxwell Foods' proposed 90 days from BOL to Debtor's proposed 60 days from BOL was not a material alteration of the contract. *See* Docket # 276-A (Tim Feit

email on February 23, 2017 at 1:34 AM, negotiating terms of the February 2017 Agreement) ("I understand you are looking for the best payment terms possible, so maybe we could start with standard terms . . . and then offer loads 5 and 6 at better terms like 60 or 90 days. Our CFO is researching export insurance, so we can have more flexibility.").

Purchase Order 93 was thus an enforceable contract with Debtor's proposed term that payment was to be 60 days from BOL replacing the original term written on the purchase order. Under Fed. R. Civ. P. 56, summary judgment is only appropriate where there is no genuine dispute as to any material fact. Whether Purchase Order 93 was an enforceable contract is a factual issue that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the dispute is "genuine" such that a reasonable jury could return a verdict for Maxwell Foods. *Id.* Therefore, this Court should reverse the Bankruptcy Court's decision granting CranGrow's motion for summary judgment.

II. **PURCHASE ORDER 93 RELATES BACK TO OTHER ORDERS MADE PURSUANT TO THE FEBRUARY 2017 AGREEMENT, AND ALL ORDERS TOGETHER ARE A SINGLE INTEGRATED TRANSACTION**

Debtor disputes that Purchase Order 93 and the initial seven loads also made pursuant to the February 2017 Agreement constitute a single integrated transaction. Due to the equitable nature of the recoupment doctrine, courts have been reluctant

to define the same-transaction standard precisely, and tend to focus instead on the facts and equities of each case. *Conopco, Inc. v. Minster Bank*, 1:07-CV-1572-DFH-JMS, 2008 WL 4443117, at *9 (S.D. Ind. Sept. 26, 2008).

Debtor concedes that the February 27, 2017 orders and the March 8, 2017 orders are a part of a single integrated transaction even though the orders are placed at different times and have differing payment terms. Debtor argues that because Maxwell Foods had already ordered seven loads, Debtor's obligations to Maxwell Foods ended, despite its assent to fulfill Purchase Order 93. However, ordering seven loads of dried cranberries was not a termination of the February 2017 Agreement, it was *a condition for it to continue* the parties' partnership. *See* Docket # 276-A (Tim Feit email on February 24, 2017 at 20:27 AM, detailing the Agreement) ("In order to continue the agreement for 2018, we will require the purchase of 7 full container loads in 2017 and to be current on payments."); Docket # 276-A (Tim Feit email on February 23, 2017 at 1:34 AM, negotiating terms of the February 2017 Agreement) ("Exclusive Selling Agreement for Australia As [sic] far as exclusivity, we are open to that idea, and would agree to it as long as you agree to order 6 loads. To continue the exclusive agreement into 2018 we would set a performance goal of 4 loads sold beyond the initial order."). Parties considered and negotiated the *required* amount of loads Maxwell Foods would have needed to order, and the seven initial loads Maxwell Foods ordered was thus

6

not a cap on CranGrow's obligations, but a fulfillment of its promise under the February 2017 Agreement. In conceding that certain orders made pursuant to the Agreement constitute a "single integrated transaction," debtor cannot disingenuously reject other orders made pursuant to the same agreement as not part of a single integrated transaction. *See Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 643 (7th Cir. 2003) (finding that two separate transactions where first, debtor applies for a tax refund with the IRS and second, where the bank makes a loan to the debtor, is together more accurately viewed as a single integrated transaction).

Therefore, this Court should reverse the Bankruptcy Court's decision granting CranGrow's motion for summary judgment.

### III. THE COURT SHOULD REMAND THE ISSUE OF ADMINISTRATIVE EXPENSE FOR THE BANKRUPTCY COURT TO DECIDE

In its principal brief, Maxwell Foods requested that the court allow Maxwell Foods to submit an administrative expense claim if the Court should decide that Purchase Order 93 and other purchase orders under the February 2017 Agreement were not a single integrated transaction but rather that Purchase Order 93 was a post-petition debt. Although Maxwell Foods did not first raise the issue in the Bankruptcy Court, the issue is not automatically precluded from the Court's adjudication and it may be raised on appeal under extraordinary circumstances. *Dougall v. Ryder Sys., Inc.*, 980 F.2d 733 (7th Cir. 1992).

Here, as a matter of timing, Maxwell Foods' only avenue was to raise the issue of administrative expense on appeal in order to preserve the issue in the Bankruptcy Court on remand. The mandate rule binds the lower court whether a case is remanded from the circuit court or the Supreme Court. *United States v. Chaidez*, 03 CR 636-6, 2013 WL 3819658, at *3 (N.D. Ill. July 22, 2013). Under the mandate rule: "(1) any issue that could have been but was not raised on appeal is waived and thus not remanded; and (2) any issue conclusively decided by [the appellate court] is not remanded." *Id.* (internal quotation marks omitted) (citing *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir.2002)).

Due to conflicting filing deadlines, Maxwell Foods was unable to raise the issue in the Bankruptcy Court before the administrative expense claim bar date on May 29, 2018. Whether Maxwell Foods has an administrative expense claim depended on the Bankruptcy Court's ruling on whether it had a right to recoupment or whether Purchase Order 93 was a post-petition debt. Even if Maxwell Foods had brought a motion to raise the issue in the Bankruptcy Court the day after the summary judgment order, the hearing date for an administrative expense request would have fallen after the deadline for Maxwell Foods to appeal the Bankruptcy Court's decision in this Court. It would have been illogical and inconsistent with Maxwell Foods' appeal for it to file an administrative expense claim in the Bankruptcy Court while at the same time it disputed the issue in this Court.

Thus, Maxwell Foods properly included the issue in its principal appellate brief to preserve the issue and requests that this Court remand the issue to the Bankruptcy Court, if this Court decides the Bankruptcy Court was not erroneous in granting summary judgment.

## CONCLUSION

For the reasons stated herein, Appellant is entitled to relief from the Bankruptcy Court's grant of CranGrow's motion for summary judgment. There are genuine issues of material fact as to whether Purchase Order 93 was an enforceable contract. Moreover, the Bankruptcy Court erred in its ruling that Purchase Order 93 and other purchase orders under the February 2017 Agreement were not a single integrated transaction. Purchase Order 93 was the result of the Agreement between the parties and together with the Februrary 2017 Agreement, it is a single integrated transaction. Maxwell Foods suffered a loss of $110,100 due to CranGrow's failure to perform on Purchase Order 93. Maxwell Foods is thus entitled to recoup its loss against any debt it owes to CranGrow for previous shipments of cranberries.

Appellant Maxwell Foods thus request the Court to vacate the Bankruptcy Court's grant of summary judgment. In the alterative, Appellant requests the Court remand the issue of the administrative expense claim for the Bankruptcy Court to decide.

**FOLEY & MANSFIELD, PLLP**

Dated: November 5, 2018 By: /s/ Cameron A. Lallier
Thomas J. Lallier (MN #163041)
Cameron A. Lallier (MN #393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
Telephone: (612) 338-8788
Facsimile: (612) 338-8690

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the limitations prescribed by Fed. R. Bankr. P. 8015. The brief has been prepared in proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font. Based upon the word-count function in said software, the brief contains 1,740 words.

**FOLEY & MANSFIELD, PLLP**

Dated: November 5, 2018   By: /s/ Cameron A. Lallier
Thomas J. Lallier (MN #163041)
Cameron A. Lallier (MN #393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
Telephone: (612) 338-8788
Facsimile: (612) 338-8690

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I, hereby certify that on November 5, 2018, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

**FOLEY & MANSFIELD, PLLP**

Dated: November 5, 2018      By: /s/ Cameron A. Lallier
Thomas J. Lallier (MN #163041)
Cameron A. Lallier (MN #393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
Telephone:   (612) 338-8788
Facsimile:    (612) 338-8690

**ATTORNEYS FOR APPELLANT**