IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MAXWELL FOODS,

                Appellant,

v.

CRANBERRY GROWERS COOPERATIVE,
d/b/a CRANGROW,

                Appellee.

OPINION AND ORDER

18-cv-538-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case arises out of a dispute between appellant Maxwell Foods and appellee Cranberry Growers Cooperative, d/b/a CranGrow, regarding the amount Maxwell Foods owes to CranGrow under two contracts for the sale of cranberries. In a written order entered on June 27, 2018, the bankruptcy court concluded that Maxwell Foods owes CranGrow $128,475 under one contract and that Maxwell Foods cannot rely on CranGrow's alleged breach of a subsequent contract to recoup or setoff the amount Maxwell Foods owes. Dkt. #1-1. Maxwell Foods appeals from the bankruptcy court's order under 28 U.S.C. § 158(a)(1). For the reasons set out below, I will affirm the bankruptcy court's decision.

BACKGROUND

In February 2017, Maxwell Foods and CranGrow entered into an agreement under which the parties agreed that (1) Maxwell would be the sole distributor of CranGrow's cranberries in Australia through the end of 2017; (2) CranGrow would sell seven loads of

1

cranberries to Maxwell during 2017 at $1.15 a pound with specific payment terms; and (3) if Maxwell stayed current on all payments for the seven loads, it would remain the sole distributor of CranGrow's cranberries in Australia through the end of 2018. Dkt. #225-1, case no. 1-17-13318-cjf (Bankr. W.D. Wis. 2017). The agreement contains no requirement that CranGrow sell to Maxwell or that Maxwell buy exclusively from CranGrow. Nor does the agreement contain any terms or agreement for sales beyond the first seven loads.

Maxwell Foods placed purchase orders for seven loads of cranberries in February and March 2017, and CranGrow shipped and delivered all seven loads under the February 2017 agreement in 2017. Maxwell has not yet paid CranGrow for the last three loads of cranberries, for which it owes $128,475.

On September 25, 2017, CranGrow filed a petition for Chapter 11 bankruptcy in the Western District of Wisconsin. Between September 27 and October 3, 2017, Maxwell Foods and CranGrow exchanged several emails regarding potential additional orders from Maxwell. As part of the email exchanges, Maxwell sent "Purchase Order 93," proposing that Maxwell purchase 10 loads of April to June 2017 cranberries at $1.05 per pound. (The parties dispute whether CranGrow accepted Purchase Order 93. According to Maxwell, CranGrow accepted the terms of the Purchase Order on October 3, 2017, making Purchase Order 93 an enforceable contract. According to CranGrow, the parties continued to negotiate the terms of Purchase Order 93 throughout October and into November 2017.)

By November 14, 2017, CranGrow still had not shipped any cranberries to Maxwell Foods under Purchase Order 93. On November 14, Maxwell sent an email to CranGrow

2

requesting cranberries from July 2017. CranGrow responded that it was sold out of cranberries. Because Maxwell could not purchase cranberries from CranGrow, it had to purchase cranberries at a higher price from other suppliers for $110,000 more than it would have paid CranGrow.

On January 31, 2018, Maxwell Foods filed a "Motion for Order Authorizing Recoupment" in the bankruptcy court, contending that (1) Purchase Order 93 was a valid contract that obligated CranGrow to sell 10 loads of cranberries to Maxwell; (2) CranGrow breached the contract, forcing Maxwell to purchase cranberries from other suppliers for an additional $110,100; and (3) Maxwell Foods should be allowed to recoup or setoff the $110,100 amount from the $128,475 debt it owes CranGrow.

The bankruptcy court certified the dispute between the parties as a "contested matter" and allowed the parties to engage in discovery. On May 15, 2018, CranGrow filed a motion for summary judgment, asking the bankruptcy court to deny Maxwell Foods's recoupment motion. Maxwell then asked to depose two representatives of CranGrow, but CranGrow declined, stating that it would agree to the depositions if the bankruptcy court denied CranGrow's motion for summary judgment.

On June 27, 2018, the bankruptcy court granted CranGrow's motion for summary judgment and denied Maxwell Foods's recoupment motion. For purposes of summary judgment, the bankruptcy court assumed that Purchase Order 93 was a valid contract that required CranGrow to sell cranberries to Maxwell. Dkt. #1-1 at 9. However, the bankruptcy court concluded that (1) the common law doctrine of recoupment did not apply

because the February 2017 agreement and Purchase Order 93 were not part of a "single integrated transaction"; and (2) Maxwell was not entitled to setoff under 11 U.S.C. § 553 because the February 2017 agreement and Purchase Order 93 did not both arise prepetition and were not "mutual" obligations as required under that section. Id. at 10-13.

OPINION

On appeal, Maxwell Foods has not developed any argument challenging the bankruptcy court's rejection of its setoff claim under 11 U.S.C. § 553. However, Maxwell contends that the bankruptcy court erred in rejecting its claim to equitable recoupment under common law. Specifically, Maxwell contends that the bankruptcy court erred by granting summary judgment on the recoupment defense to CranGrow before the close of discovery and by concluding that the February 2017 agreement and Purchase Order 93 were not part of a single integrated transaction such that Maxwell would be entitled to recoupment. In considering Maxwell's arguments, I review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. Adams v. Adams, 738 F.3d 861, 864 (7th Cir. 2013).

Maxwell Foods's argument challenging the timing of the bankruptcy court's decision is without merit. Maxwell contends that the bankruptcy court's summary judgment decision was premature because there are genuine factual disputes regarding whether Purchase Order 93 was a valid and enforceable agreement. Maxwell argues that its planned depositions of two of CranGrow's corporate officers are highly relevant to that factual dispute. However,

any dispute regarding the enforceability of Purchase Order 93 is immaterial to the bankruptcy court's rejection of Maxwell's recoupment and setoff arguments. For purposes of summary judgment, both CranGrow and the bankruptcy court assumed that Purchase Order 93 was enforceable and that CranGrow owed Maxwell $110,100 as a result of CranGrow's failure to fulfill Purchase Order 93. Nonetheless, the bankruptcy court concluded that Maxwell was not entitled to recoupment or setoff of its liability to CranGrow under the February 2017 agreement because the two agreements were independent contracts and were not part of a single integrated transaction. Maxwell has not explained how additional discovery regarding the validity of Purchase Order 93 could affect the bankruptcy court's analysis or the outcome of its recoupment or setoff defenses in any way. Therefore, the timing of the bankruptcy court's decision is not a basis for remand.

The next question is whether the bankruptcy court erred in rejecting Maxwell's recoupment defense. The Bankruptcy Code does not discuss recoupment, but courts have long applied the equitable doctrine of recoupment in the bankruptcy context. 5 Collier on Bankruptcy ¶ 553.10 (16th ed.). The common law doctrine of recoupment is more limited than the statutory right to setoff under 11 U.S.C. § 553. In particular, § 553 permits a creditor to offset certain mutual debts in a bankruptcy proceeding so long as both the debtor's and creditor's debts arose either prepetition or postpetition. In other words, under § 553, a creditor may not set off a prepetition claim against a postpetition obligation. Id.; In re Health Management Ltd. Partnership, 336 B.R. 392, 395 (Bankr. C.D. Ill. 2005); In re CDM Management Services, Inc., 226 B.R. 195, 196 (Bankr. S.D. Ind. 1997). In

5

contrast, a creditor can rely on the doctrine of recoupment to reduce an obligation if both debts arose out of the "same transaction or occurrence that gives rise to the liability sought to be reduced." 5 Collier on Bankruptcy ¶ 553.10 (16th ed.).

As the bankruptcy court noted, the Court of Appeals for the Seventh Circuit has not adopted a specific test for determining whether the relevant obligations constitute part of the "same transaction" for purposes of equitable recoupment. In evaluating Maxwell's recoupment claim, the bankruptcy court applied the "single integrated transaction" test. Dkt. #1-1 at 8 (collecting cases applying "single integrated transaction" test). On appeal, both parties also analyze Maxwell's recoupment defense under the single integrated transaction test, so I will do the same.

Under the single integrated transaction test, "the obligations in question must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations." 5 Collier on Bankruptcy ¶ 553.10 (16th ed.) (citing In re University Medical Center, 973 F.2d 1065, 1081 (3d Cir. 1992)). There must be "such a close, necessary relationship between the events" giving rise to both obligations "that the amount of the former cannot fairly be determined without accounting for the latter." In re St. Francis Physician Network, Inc., 213 B.R. 710, 719 (Bankr. N.D. Ill. 1997). Courts have generally, but not always, found the "same transaction" requirement to be satisfied where the liabilities arose from a single contract. 5 Collier on Bankruptcy ¶ 553.10 (16th ed.). See also In re Peterson Distributing, Inc., 82 F.3d 956, 960 (10th Cir. 1996) ("A 'same contract equals same transaction' rule

6

would be overly simplistic. Instead, as our case law illustrates, the 'same transaction' analysis involves an examination of the parties' equities."). Thus, whether competing obligations arise from a single integrated transaction depends on the "particular facts of each case." 5 Collier on Bankruptcy ¶ 553.10 (16th ed.).

In this case, the bankruptcy court concluded that the February 2017 agreement and Purchase Order 93 were not part of a single integrated transaction. The February 2017 agreement included three specific provisions, none of which were dependent on Purchase Order 93. Specifically, the February 2017 agreement stated that (1) Maxwell would be the sole distributor of CranGrow's cranberries in Australia through the end of 2017; (2) CranGrow would sell seven loads of cranberries to Maxwell during 2017; and (3) if Maxwell stayed current on all payments for the seven loads, it would remain the sole distributor of CranGrow's cranberries in Australia through the end of 2018. None of these terms carried over into Purchase Order 93. At the time Purchase Order 93 was negotiated, CranGrow had already fulfilled its obligations to treat Maxwell as its exclusive distributor in Australia and had shipped the seven loads anticipated under the February 2017 agreement. The February 2017 agreement imposed no further obligations on CranGrow to sell cranberries to Maxwell. Thus, Purchase Order 93 imposed new obligations that were not dependent on the February 2017 agreement.

I agree with the bankruptcy court's analysis. Maxwell's obligation to CranGrow arose from the February 2017 agreement requiring that seven loads be delivered, but CranGrow's obligation to Maxwell arose from an entirely separate agreement, Purchase Order 93. The

7

agreements were entered into at different times and contain different terms. The February 2017 agreement and Purchase Order 93 are not so closely related that "the amount [Maxwell owes under] the former cannot fairly be determined without accounting for [what CranGrow owes under] the latter." In re St. Francis Physician Network, Inc., 213 B.R. at 719.

Maxwell argues that because the February 2017 agreement established the relationship between the parties and facilitated future purchase orders, all subsequent purchase orders between the parties relate back to the February 2017 agreement and should be considered a single integrated transaction. However, even if the February 2017 agreement established a relationship between the parties, it did not control all future orders. Beyond the seven loads anticipated by it, the February 2017 agreement contained no price or payment terms that applied to future orders. The February 2017 agreement did not even require that CranGrow sell cranberries or that Maxwell buy cranberries from CranGrow beyond the first seven orders. Thus, before entering into Purchase Order 93, the parties had to engage in several back and forth emails to negotiate its terms. The resulting purchase order was a new, independent contract and was not part of a single integrated agreement with the February 2017 agreement. Therefore, I conclude that the bankruptcy court was correct in holding that Maxwell was not entitled to a recoupment defense.

There is one final matter. Maxwell Foods argues that if the court affirms the bankruptcy court's decision, Maxwell should be permitted to file an administrative expense claim for the $110,100 owed by CranGrow even though the administrative expense claims bar date has expired. Maxwell cites Fed. R. Bankr. P. 9006(b), which permits a bankruptcy

court to grant relief if a late filing was the result of "excusable neglect." However, I cannot consider this argument because it is not properly before this court. Maxwell Foods never requested this relief from the bankruptcy court and instead raised this argument for the first time on appeal. Because there is no ruling from the bankruptcy court on this issue for this court to review, I will deny Maxwell's request. Matter of Kroner, 953 F.2d 317, 319 (7th Cir. 1992) (arguments not presented to the bankruptcy "court are waived and cannot be raised for the first time on appeal").

ORDER

IT IS ORDERED that the decision of the bankruptcy court granting summary judgment to Cranberry Growers Cooperative, d/b/a CranGrow, and denying Maxwell Foods's motion for setoff or recoupment is AFFIRMED. The clerk of court is directed to close this case.

Entered this 12th day of February, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge